DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Plaskolite, Inc., commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order granting continuing temporary total disability compensation to respondent Randy O'Rourke after finding that he has not reached maximum medical improvement and that relator did not make a good-faith job offer to claimant, and to re-determine the issue after fully addressing whether relator made a good-faith job offer to claimant which he refused.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded the commission did not abuse its discretion in denying relator's motion to terminate claimant's temporary total disability compensation. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's conclusions of law, contending the magistrate erred in finding the opinions of Drs. Fleming and Linehan to dispose of the issue of a good-faith offer of light-duty employment raised in this action. Relator contends "the Magistrate mistakenly concludes that because the Commission relied on the opinion of the attending physicians for a finding that claimant had not reached maximum medical improvement, the Commission also was `implicitly' adopting their opinion that claimant did not have the ability to perform the light duty work that had been offered to him." (Relator's Objections, 2.)
 {¶ 4} The evidence on which the commission relied supports the Industrial Commission's determination. After his industrial injury, claimant returned to relator's light-duty position of "plastic peeler" until his attending physician, Dr. Fleming, indicated he could no longer perform the duties of that job. Dr. Fleming then sought renewal of temporary total disability compensation for claimant.
 {¶ 5} Moreover, the magistrate did not suggest that the opinions of Drs. Fleming and Linehan that claimant had not reached maximum medical improvement also resolved the issue of a good-faith offer of light-duty employment. Instead, the magistrate noted the commission relied on the opinions of Drs. Fleming and Linehan, and in his report Dr. Fleming not only did not approve the light-duty position, but stated that claimant could not perform that work. As the magistrate explained, "In finding the reports of Drs. Fleming and Linehan to be persuasive, the commission found that claimant was again temporarily and totally disabled and that he was not able to continue in a light-duty job which relator had made available to him in September 2003. As such, the commission implicitly rejected the report of Dr. Steiman. Having rejected that report, Dr. Steiman's opinion that claimant could perform the job of a `plastic peeler' became irrelevant * * *." (Magistrate's Decision, ¶ 37.)
 {¶ 6} While the staff hearing officer could have more definitively addressed the evidence regarding the issue, we see little to be gained in returning this matter to the commission for a more definitive statement about relator's offer of light-duty employment: the staff hearing officer clearly rejected that offer as a basis for terminating temporary total disability benefits, albeit for the wrong reasons, and the medical evidence on which the staff hearing officer relied supports the staff hearing officer's conclusion that claimant could not perform the light-duty work relator offered. Thus, under the circumstances of this case, we cannot say the commission abused its discretion in denying relator's request that temporary total disability compensation be terminated. Accordingly, relator's objections are overruled.
 {¶ 7} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Plaskolite, Inc., :
 Relator, :
v. : No. 04AP-1151
Industrial Commission of Ohio, : (REGULAR CALENDAR)
and Randy O'Rourke, :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on April 29, 2005.
Vorys, Sater, Seymour Pease LLP, Bradley K. Sinnott and Gina R.Russo, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
Koltak Gibson, L.L.P., and Peter J. Gibson, for respondent Randy O'Rourke.
 IN MANDAMUS {¶ 8} Relator, Plaskolite, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted continuing temporary total disability ("TTD") compensation to respondent Randy O'Rourke ("claimant") after finding that claimant has not reached maximum medical improvement ("MMI"), upon finding that relator did not make a good-faith job offer to claimant, and ordering the commission to redetermine the issue after fully addressing the issue of whether relator made a good-faith job offer to claimant which he refused.
Findings of Fact:
 {¶ 9} 1. Claimant sustained a work-related injury on April 1, 2003, and relator, a self-insured employer, originally certified his claim for: "lumbar strain."
 {¶ 10} 2. Thereafter, claimant requested that his claim be additionally allowed for: "herniated disc L3-4."
 {¶ 11} 3. Relator had claimant examined by Gerald S. Steiman, M.D., who issued a report dated July 10, 2003. Dr. Steiman opined that: claimant's April 1, 2003 industrial injury was the cause of the disc herniation at the L3-4 level; noted claimant was not able to return to his prior position of employment; indicated claimant has not reached MMI; and claimant was a candidate for surgical intervention relative to the disc herniation.
 {¶ 12} 4. Claimant's motion for the additional allowance for the payment of TTD compensation was heard before a district hearing officer ("DHO") on July 22, 2003, and resulted in an order additionally allowing the claim for: "herniated disc L3-4."
 {¶ 13} 5. The DHO also granted an award of TTD compensation beginning May 28, 2003. The DHO relied upon the July 10, 2003 report of Dr. Steiman as well as a C-84 prepared by Keith A. Hollingsworth, M.D.
 {¶ 14} 6. Claimant was seen by his treating physician, Mark S. Fleming, M.D., on September 24, 2003. At that time, Dr. Fleming opined that claimant could return to light-duty work on September 29, 2003 with the following restrictions: half days for the first two weeks; no repetitive lifting of more than 25 pounds for the next two months; and no standing in a constant bent position or sustained squatting.
 {¶ 15} 7. According to relator, claimant returned to work in the light-duty position of "plastic peeler."
 {¶ 16} 8. Claimant returned to see Dr. Fleming on February 23, 2004, because of problems and Dr. Fleming said that he should not be working and that "light duty is not an option available for him." Dr. Fleming indicated that he was going to refer claimant to Ron P. Linehan, M.D., for aggressive conservative treatment. Dr. Fleming also completed a C-84 form seeking the renewal of TTD compensation for claimant.
 {¶ 17} 9. The record contains the April 26, 2004 letter of Dr. Fleming indicating that there have been problems getting claimant referred back to Dr. Linehan for treatment and that claimant "has residual discogenic pain [which] tends to be worse with disc stressful activities such as sitting and bending." Dr. Fleming again indicated that if these measures fail, then a fusion should be considered.
 {¶ 18} 10. Relator again referred claimant to Dr. Steiman for a follow-up examination. Dr. Steiman issued a report dated April 26, 2004, wherein he concluded that claimant had reached MMI, and that he would be capable of performing the job activity of a "plastic peeler" pursuant to the job description form relator provided Dr. Steiman. Dr. Steiman also completed an occupational activity assessment wherein he concluded that: claimant could sit and stand for three to five hours and walk for zero to three hours; lift or carry up to ten pounds for three to five hours, but was precluded from lifting above ten pounds; could push, pull or otherwise move less then ten pounds for zero to three hours, but was precluded from pushing, pulling, or otherwise moving more than ten pounds; could frequently handle objects; occasionally reach overhead and at waist level; and was precluded from climbing stairs, ladders, using foot controls, crouching, stooping, bending, kneeling, and reaching at knee or floor level.
 {¶ 19} 11. Because Dr. Steiman indicated that it was his opinion claimant could perform the job of plastic peeler, relator sent claimant a letter on May 18, 2004, indicating that the position of plastic peeler is immediately available to claimant and requesting that claimant call as soon as he receives the letter to make arrangements to return to work. Relator included the job description for a plastic peeler as follows:
The Plastic Peeler position is a temporary, light duty function. Claimant has a sit/stand option. In the position, the worker peels a plastic film from small and light scraps of plastic. He occasionally is required to reach into a box to remove scraps for peeling. That box is put in place by another employee at a position convenient to the peeler. A peeler has a 30 minute lunch break during a regular eight hour work shift and can take comfort breaks as needed. There is no lifting required of more than five pounds. Any physical activity that the peeler believes to be outside his capacity at the moment can be performed by another employee at the peeler's request.
 {¶ 20} 12. On May 19, 2004, relator filed a motion with the commission seeking to terminate claimant's TTD compensation on the basis that he had reached MMI and that relator had made work within claimant's physical capabilities available to him. In support, relator attached the April 26, 2004 report of Dr. Steiman as well as its May 18, 2004 written offer of light-duty employment.
 {¶ 21} 13. On May 26, 2004, Dr. Steiman issued a follow-up report after reviewing additional medical records. Dr. Steiman opined that future epidural injections are not likely to provide claimant with any relief.
 {¶ 22} 14. On June 28, 2004, Dr. Linehan issued a report indicating that the request for diagnostic sacroiliac joint injections had been denied because of the independent medical examination indicating that claimant had reached MMI. Dr. Linehan opined that claimant had not reached MMI and could likely benefit from further treatments. In the event those treatments did not provide relief, Dr. Linehan indicated that diagnostic lumbar discography would be appropriate.
 {¶ 23} 15. The employer's request to terminate TTD compensation was heard before a DHO on June 29, 2004. The DHO denied relator's request as follows:
The District Hearing Officer denies the request to terminate temporary total compensation and finds the injured worker has not reached maximum medical improvement based on the report of Dr. Linehan dated 06/28/2004 and Dr. Fleming (performed the L3-4 discectomy). Both physicians recommend the present course of diagnostic sacroiliac joint injections to define the pain generator. Also, both state that if the injections are not successful, then further surgery is the last remaining option.
 {¶ 24} 16. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on August 2, 2004. The SHO affirmed the prior DHO order and stated further as follows:
The Staff Hearing Officer agrees with the reasoning and decision of the District Hearing Officer that temporary total compensation is to continue upon submission of medical proof per the 06/28/2004 report of Dr. Linehan and the 04/26/2004 report of Dr. Fleming as claimant has not yet reached maximum medical improvement. Additionally, the Staff Hearing Officer finds the employer's offer of a light duty job to not be sufficient to terminate temporary total compensation as it was not approved by the attending physician, nor documented to have been received by the claimant as required by Ohio Administrative Code 4121-3-32.
 {¶ 25} 17. Relator's further appeal was refused by order of the commission mailed August 25, 2004.
 {¶ 26} 18. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 27} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 28} A single issue is raised in this mandamus action, whether the commission considered relator's written job offer to claimant in its order denying relator's motion to terminate TTD compensation and instead finding that claimant was entitled to continued compensation. For the reasons that follow, this magistrate finds that relator has not demonstrated that the commission abused its discretion.
 {¶ 29} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation is payable to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A).
 {¶ 30} Ohio Adm. Code 4121-3-32 relates to temporary disability and provides, in relevant part, as follows:
(B)(1) Temporary total disability may be terminated by a self-insured employer or the bureau of workers' compensation in the event of any of the following:
* * *
(b) The employee's treating physician finds that the employee is capable of returning to * * * other available suitable employment.
* * *
(2) Except as provided in paragraph (B)(1) of this rule, temporary total disability compensation may be terminated after a hearing as follows:
* * *
(d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment.
 {¶ 31} Relator is correct in asserting that this court has recognized that there are two different rules for terminating TTD compensation relative to a written job offer of suitable employment. First, either the bureau or a self-insuring employer may terminate TTD compensation where the claimant's treating physician has found that the claimant is capable of returning to his former position of employment or other available suitable employment. "Treating physician" is defined as the "attending physician of record on the date of the job offer." Ohio Adm. Code4121-3-32(A)(4). Second, in contrast, when the matter is contested and is being determined at an evidentiary hearing, Ohio Adm. Code4121-3-32(B)(2)(d) provides that TTD compensation may be terminated upon a finding that the employee has received a written job offer of suitable employment. The hearing officer may rely on any medical evidence it finds persuasive, whether it is a report of a treating physician or another physician.
 {¶ 32} In the present case, claimant's treating physician, Dr. Fleming, clearly opined that relator was temporarily totally disabled and, in his report dated February 23, 2004, Dr. Fleming indicated that the light-duty job which claimant had been performing was not a viable option for him at this time. As stated previously, the record indicates that, in September 2003 when claimant was released to light-duty work, relator provided him with the job of "plastic peeler," which is the same job being offered again in May 2004. While it is true that Dr. Steiman issued a report wherein he opined that claimant could perform the position of "plastic peeler," it is apparent that Dr. Fleming did not agree as he indicated that claimant could not continue doing the job which he had returned to the preceding September.
 {¶ 33} The DHO and SHO both relied upon the reports of Drs. Fleming and Linehan in determining that claimant was precluded from returning to his former position of employment and that he was temporarily and totally disabled. As such, the commission rejected Dr. Steiman's report wherein he indicated that claimant was capable of performing work within the physical capabilities outlined in his occupational activity assessment including the job of "plastic peeler."
 {¶ 34} Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder and it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission. Teece; State exrel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373. By finding Dr. Fleming's report persuasive, which report implicitly indicates that claimant cannot return to the position of employment as "plastic peeler," and that he is temporarily and totally disabled, the commission rejected the report of Dr. Steiman that claimant could perform that job. As such, it is clear that the commission concluded that the job of "plastic peeler" was not an offer of suitable employment as it was not within the claimant's physical capabilities as determined by the commission.
 {¶ 35} Relator points out that the only comment the SHO made regarding the light-duty job offer was that the claimant's treating physician has not approved it and it had not been documented that the claimant had received it as required by the Ohio Administrative Code. As stated previously, relator is correct that the treating physician's opinion is only relevant where the self-insuring employer seeks to unilaterally terminate TTD compensation. Otherwise, when the matter is contested, the commission is free to choose between medical reports and can determine that a certain job offer is within a claimant's physical capabilities. As such, the fact that claimant's treating physician had not approved the job is immaterial. However, as stated previously, the commission did rely on the treating physician's opinion regarding claimant's physical capabilities and, accordingly, the commission found his opinion to be relevant.
 {¶ 36} Furthermore, relator is also correct in noting that the Ohio Administrative Code does not provide documentation that the claimant actually receive the job offer, especially in light of the fact that relator was not arguing that claimant had refused the job offer. However, the code provision does provide that a written job offer must be made 48 hours before proceedings are initiated. In the present case, relator sent claimant the job offer on May 18, 2004, and then initiated proceedings on May 19, 2004, 24 hours later instead of 48 hours. However, because claimant has never asserted that he did not receive the offer and did not have notice that the matter was being contested, this language in the commission's order has no bearing on the matter.
 {¶ 37} As stated previously, when claimant returned to light-duty work in September 2003, he worked in the position of a "plastic peeler." As of February 2004, claimant was not able to continue in this light-duty position and Dr. Fleming certified him as again being temporarily and totally disabled. Thereafter, pursuant to the report of Dr. Steiman, relator again offered claimant the job of "plastic peeler" and then filed a motion seeking to terminate claimant's TTD compensation on the basis that he had reached MMI and, further, that relator had made a good-faith job offer. In finding the reports of Drs. Fleming and Linehan to be persuasive, the commission found that claimant was again temporarily and totally disabled and that he was not able to continue in a light-duty job which relator had made available to him in September 2003. As such, the commission implicitly rejected the report of Dr. Steiman. Having rejected that report, Dr. Steiman's opinion that claimant could perform the job of a "plastic peeler" became irrelevant and the commission was not required to make any further findings relative to this matter.
 {¶ 38} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying the motion of relator to terminate claimant's TTD compensation and relator's request for a writ of mandamus should be denied.